UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **MATT BANKS** | **:** | **CIVIL ACTION NO. 14-2554** |
| **VS.** | **:** | **JUDGE TERRY A. DOUGHTY** |
| **DARREL VANNOY, WARDEN**<br>**LOUISIANA STATE PENITENTIARY** | **:** | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Petitioner Matt Banks, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant Petition for *writ of habeas corpus* pursuant to 28 U.S.C. § 2254 on August 21, 2014. [doc. # 1]. Petitioner attacks his two second degree murder convictions and the two life sentences imposed by the Fourth Judicial District Court, Ouachita Parish. This matter was remanded to the District Court from the United States Court of Appeals for the Fifth Circuit, and referred to the undersigned to conduct an evidentiary hearing, and for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

### I. Background

The underlying facts in this case were set forth by the Louisiana Second Circuit Court of Appeal as follows:

> Shortly after 11:00 p.m. on June 29, 2002, firefighters found the bodies of Irma Williams and her brother, Roy Tugler, inside their burning home at 1606 Hwy. 139 in Monroe, Louisiana. Each body revealed blunt force trauma. The body of Williams was partially burned and smelled of accelerant.

> Williams and Banks were involved in a violent relationship for over a decade. They had recently broken up, and she was dating another man.
>
> Authorities interviewed Banks on the day after the murders. His truck and home were searched and items removed for analysis. Also occurring on the day after this horrific event was the discovery of an iron plumbing pipe at the crime scene. Banks is a plumber. Human hairs were embedded in one end of the pipe along with what was believed to be blood. None of the physical evidence linked Banks to the crime scene. The case lay dormant for seven years.
>
> In 2009, a former deputy revealed that a neighbor of Banks's might have relevant information. The neighbor stated that on the night of the murders, he heard Banks talking loudly with Williams and then later saw Banks walking away from the neighborhood. After further investigation, Banks was arrested and indicted for two counts of second degree murder. He was convicted as charged.

*State v. Banks*, 86 So. 3d 56, 57 (La. App. 2 Cir. 2012).

The trial court ordered Petitioner to serve two consecutive life imprisonment sentences at hard labor without benefit of probation, parole, or suspension of sentence. [doc. # 9-3, p. 22-25]. The Second Circuit Court of Appeal affirmed Petitioner's convictions and sentences on January 25, 2012. *Banks*, 86 So. 3d at 66. The Louisiana Supreme Court denied Petitioner's subsequent application for writ of certiorari on May 25, 2012. *State v. Banks*, 90 So. 3d 410 (La. 2012).

On December 18, 2012, Petitioner filed a *pro se* application for post-conviction relief in the trial court. [doc. # 1-2, p. 31]. There, Petitioner claimed that his counsel was ineffective for several reasons: (1) failure to investigate and interview witnesses; (2) failure to inform petitioner of plea deals; (3) failure to object to gruesome photographs; (4) failure to object to prosecutorial misconduct; (5) failure to object to a jury instruction; and (6) failure to seek independent scientific testing of the evidence. *Id.* The district court denied the application on May 14, 2013. [doc. # 1-3, p. 34]. The Second Circuit Court of Appeal affirmed the denial on August 22, 2013. *Id.* at 54. The Louisiana Supreme Court, on May 2, 2014, denied Petitioner's writ application.

*Id.* at 257.

Petitioner filed the instant Petition on August 21, 2014. [doc. # 1]. He raised two assignments of error: insufficient evidence and ineffective assistance of counsel for the six reasons set forth above. *Id.* On March 12, 2015, this Court entered judgment [doc. #13], denying and dismissing with prejudice Petitioner's petition, and denying Plaintiff's application for a certificate of appealability [doc. #14].

On March 21, 2016, the United States Court of Appeals for the Fifth Circuit entered an Order granting Petitioner a certificate of appealability on the sole issue of ineffective assistance of counsel for failure to inform Petitioner of plea deals. *Banks v. Cain*, 5th Cir. Case No. 15-30258, doc. #00513431904. On September 27, 2017, the Fifth Circuit vacated the District Court's judgment on the above-referenced issue and remanded for further proceedings, holding that "the record before us does not conclusively indicate whether Banks's trial counsel actually communicated either of the two plea offers to Banks. . . . [W]e conclude that an evidentiary hearing on the issue is warranted." *Banks v. Cain*, 5th Cir. Case No. 15-30258, docs. #00514173097 and #00514173098.

Thus, the sole remaining claim before this court is Petitioner's ineffective assistance of counsel claim for failure to inform Petitioner of plea offers.

## II. Evidentiary Hearing.

On March 8, 2018, the undersigned conducted an evidentiary hearing, with testimony from the Petitioner and the two prosecutors from his state court trial.

    A.    *Neal Johnson's Testimony.*

Mr. Johnson testified as follows: He was an assistant district attorney for 24 years and

was the lead attorney on the criminal prosecution of Petitioner. Brandon Brown, who was also an assistant district attorney at the time, assisted him with Petitioner's case.

Mr. Johnson sent the letters admitted as exhibits D-1 and D-3 to Petitioner's counsel, Charles Kincade in January 2011 and March 2010, respectively. Mr. Johnson said that he always emailed correspondence to Mr. Kincade with a return receipt to confirm that defense counsel received and opened the correspondence. He recalled receiving a return receipt with these letters.

Mr. Johnson considered the plea offers he made to Petitioner to be "a sweet deal," and that he made these offers based on several factors related to fact that the case was 9 years old at the time of the prosecution, which could create problems such as witness unavailability or poor witness memory. Mr. Johnson confirmed that he discussed the plea offers and Petitioner's responses with Mr. Kincade. With respect to the March 2010 fifteen year cap plea offer, Mr. Kincade informed him that Petitioner's position was that he was innocent and that he refused to plead guilty.

Mr. Johnson testified that he made the 10 year cap plea offer to Mr. Kincade while both Mr. Kincade and the Petitioner were in the courtroom for hearings on pretrial motions on the case on November 23, 2010. He made the improved offer because the original forensic pathologist, Dr. McCormick, had died, and he did not wish to have to exhume the victims' bodies for a second autopsy. Mr. Johnson testified that, after he made the offer to Mr. Kincade, Mr. Kincade went over to "the box"[1] and had a discussion with Petitioner, which Mr. Johnson

---

[1] Detained prisoners are seated in the jury box for pretrial hearings in the courtroom in question.

4

could not hear. Mr. Johnson testified that following that discussion, Mr. Kincade walked back over to Mr. Johnson, and told him that Petitioner maintained his innocence and refused to plead guilty. Mr. Johnson acknowledged that he normally will make a statement on the record documenting the fact that he had discussed plea offers with defense counsel, but that he neglected to do so in this case.

The plea offer was never presented to Judge Manning, the trial judge presiding over Petitioner's criminal case, because at that time Judge Manning had a policy requiring the prosecution and defense to discuss and reach an agreement on plea deals before presenting them to him prior to the trial date. He explained that the parties did not discuss their plea offers with Judge Manning because they never reached a plea agreement. He noted that Judge Manning would not consider a plea without hearing from the victim or victim's family and that Judge Manning was quite willing to exercise his discretion to deny approval of plea agreements.

  *B.  Brandon Brown's Testimony.*

Mr. Brown testified that he was an assistant district attorney for Louisiana's Fourth Judicial District from approximately 2007 to November 2012, and that he assisted Mr. Johnson in the prosecution of Petitioner. Mr. Brown was thoroughly involved in plea negotiations with Petitioner. He thought the plea offers were extremely good and that the reason for making such good offers that the prosecution was having witness issues.

Mr. Brown spoke with Mr. Kincade regarding the plea offers. He specifically remembered Mr. Kincade stating that he could not get Petitioner "to come around" and accept the plea offer. Mr. Kincade informed him that Petitioner believed the prosecution's witnesses were insufficient to convict him, and that he would "roll the dice and go to trial."

5

Mr. Brown remembered Mr. Johnson offering a plea deal to Mr. Kincade while they were on a break in a court hearing, and that he watched Mr. Kincade pull Petitioner aside in the jury box and speak with him, but that he did not hear what they were saying. Mr. Brown was present when Mr. Kincade then informed Mr. Johnson that Petitioner would not enter a plea deal at that time.

Mr. Brown testified that Judge Manning frequently denied approval of plea agreements between the prosecution and criminal defendants, and that he would not approve a plea if he did not see proof that the victim or victim's family had been informed of the plea deal, or if the sentence was insufficiently harsh. Mr. Brown testified that Judge Manning is a tough sentencing judge, pointing out that in Petitioner's case the standard sentence would have run concurrently because the two victims were killed at the same time, but Judge Manning ordered that the sentences be consecutive. Mr. Brown testified that the victim's family had been contacted and consented to the plea offers made to Petitioner.

    C.    *Petitioner's Testimony.*

Petitioner testified that he was originally arrested on June 17, 2009, on charges of two counts of second degree murder, and that he retained attorney Charles Kincade to represent him in the case. Petitioner testified that Mr. Kincade visited Petitioner prior to trial, but never discussed his options in the case, and never informed Petitioner that he could receive a life sentence if he was convicted or that the prosecuting attorney had made a plea offer. Petitioner claimed that he had taken plea offers approximately ninety percent of the time in his other cases, and that he would have taken one in this case, but denied that he ever asked Mr. Kincade if a plea offer had been made, and stated that he did not initiate any type of plea negotiation.

Following his conviction, Petitioner requested Mr. Kincade's file on his case, and received that file along with a letter from Mr. Kincade which was admitted into evidence at the hearing as exhibit "D-2." The letter, dated June 4, 2012, states that Mr. Kincade is providing Petitioner with his entire file and notes that Mr. Kincade withdrew from his representation of Petitioner in April 2011, following the appointment of appellate counsel. The file contained two letters from the lead prosecuting attorney, Neal Johnson. Those letters were entered into evidence as exhibits "D-1" and "D-3." Exhibit D-3 is a letter from Mr. Johnson to Mr. Kincade dated March 23, 2010, which reads in pertinent part as follows:

> I am willing to allow Matt Banks to plea to 2 counts of manslaughter with a 15 year cap. Both sentences can run concurrent. This offer will remain open until April 15. If I have to go through the process of exhuming the bodies in order to present this matter for trial, then all offers are off. Please advise.

Exhibit D-1 is a letter from Mr. Johnson to Mr. Kincade dated January 21, 2011, which reads as follows:

> In preparation for the trial, I am arranging for the bodies to be exhumed next week, in order for Dr. Peretti to be able to observe the wounds caused by the alleged murder weapon. Once the bodies are exhumed, I will no longer offer Mr. Banks the original plea offer of manslaughter with a ten year cap. He might want to consider the offer carefully before it is gone.

Petitioner claimed that he was not aware of those letters until he received his file from Mr. Kincade following his conviction, and that Mr. Kincade never informed him of the plea offers referenced in the letters. Petitioner denied any recollection of Mr. Kincade's discussing a plea offer with him in court on November 23, 2010.

Petitioner testified that the highest grade he completed in school was the fifth grade, but he obtained some additional education and technical training beyond that. He claimed that he first learned of the plea offers after the "inmate counsel" reviewed his file and informed

Petitioner of them. Petitioner stated that he had help in drafting several *pro se* pleadings he filed in this matter.

The file Petitioner received from Mr. Kincade also contained a note referring to a potential witness, Ruthie May Williams. Plaintiff testified that he drafted a letter to Mr. Kincade asking about Ms. Williams. That letter, dated May 26, 2012, was admitted at the hearing as exhibit "D-4." His recollection regarding the timing of this letter in relation to when he received his file from Mr. Kincade was contradictory.

### D.  *Petitioner's Hearsay Objection.*

Petitioner's counsel objected to the Court's considering Mr. Johnson and Mr. Brown's testimony on Mr. Kincade's statements regarding his discussion of the plea offers with Petitioner on the grounds of hearsay. Those statements fell into three categories: (1) Petitioner's reaction to the plea offer, (2) Petitioner's reasoning for declining the plea offer, and (3) Mr. Kincade's inability to convince Petitioner to accept the plea offer. The undersigned overruled Petitioner's objection pursuant Fed. R. Evid. 801(d)(2)'s exception for statements offered against an opposing party. Rule 801(d)(2) provides in relevant part that a statement offered against an opposing party that was "made by the party [or] . . . made by a person whom the party authorized to make a statement on the subject" is not hearsay. Here, there are two layers of potential hearsay with the first two categories, Petitioner's statements to Mr. Kincade and Mr. Kincade's statements to Mr. Johnson and Mr. Brown. Both layers fall under the Rule 801(d)(2) exception because Petitioner is an opposing party and he authorized Mr. Kincade to make statements on the subject of plea bargaining.

In addition, the undersigned concludes that this testimony would be admissible under Fed. R. Evid. 807's residual exception. Rule 807 provides that a hearsay statement is admissible if the following four elements are met:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a). Mr. Kincade was an officer of the court speaking on behalf of his client in direct proximity to his client, which the undersigned finds to be sufficient guarantee of trustworthiness. These statements are relevant to the central issue in this hearing: whether Petitioner was aware of the prosecution's plea offers. Mr. Kincade is deceased and the undersigned is not aware of any recorded or written communication between Mr. Kincade and Petitioner on this subject, so Mr. Johnson's and Mr. Brown's testimony is almost certainly the most probative evidence on this matter which the proponents of the evidence can obtain. The undersigned concludes that admitting this testimony is just, and in accord with the purposes of the hearsay rules.

Finally, the probative value of Mr. Kincade's statements, as testified to by Mr. Johnson and Mr. Brown, does not lie in the "truth of the matter asserted." Petitioner went to trial, so it is clear that he did not accept a plea deal. The probative value of Mr. Kincade's statements to the prosecutors informing them that Petitioner declined the plea offers is that they are evidence that Mr. Kincade presented the plea offers to his client. Petitioner's reasoning for declining the plea offers is in itself irrelevant. However, Mr. Kincade's awareness of Petitioner's reasoning shows that he not only relayed the plea offers, but also discussed them with Petitioner. Similarly, Mr.

Kincade's statements about his failure to persuade Petitioner to accept a plea deal are relevant only to the extent they go to prove that he had conversations with Petitioner about the costs and benefits of accepting the plea offer.

### III. Findings of Fact.

The undersigned finds that the testimony of Mr. Johnson and Mr. Brown is highly credible. Their testimony was internally consistent and coherent, and their credibility was not impeached in any way at the hearing.

The undersigned finds that Petitioner was not a credible witness. Specifically, Petitioner's testimony that Mr. Kincade did not inform him of either plea offer and that he was interested in a plea deal even though he never inquired of Mr. Kincade about the possibility of a plea deal was incredible. Mr. Johnson and Mr. Brown both testified that when Mr. Johnson made a ten year sentence plea offer to Mr. Kincade while in they were in the courtroom, they witnessed Mr. Kincade pull Petitioner aside and converse with him, then return to report that his client would not accept the plea offer. The undersigned finds that, under the circumstances, it is beyond reason that Mr. Kincade and Petitioner were discussing anything other than the plea offer.

While Petitioner has only a fifth grade education, he is intelligent and experienced enough to understand the ordinary processes of a criminal case. Petitioner proceeded *pro se* throughout much of this *habeas corpus* matter. By Petitioner's own admission he has previously entered several guilty pleas on various criminal charges, and routinely accepted guilty pleas when facing criminal charges. Accordingly, it is simply not credible that, if Petitioner was open

to accepting a plea deal, he would not ask Mr. Kincade about the possibility of one, or ask him to initiate plea negotiations. Further, based on the testimony of Mr. Johnson and Mr. Brown, the prosecution's case was not exceptionally strong at the time those offers were made. Therefore, Petitioner had reason to hope that he could defeat the charges at trial. Petitioner's claim that he was desperate to plead and would have accepted any plea offer made, but did not inquire about the possibility of a plea deal with his attorney despite having multiple opportunities to do so, is simply not credible.

### IV. Legal Analysis.

The petition invokes 28 U.S.C. § 2254(d), which provides that a federal court may issue a writ of *habeas corpus* based on an issue previously adjudicated in state court only where the state court's decision on the issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court did not hold a hearing on the merits of Petitioner's claim that his Sixth Amendment right to effective assistance of counsel was violated because his trial counsel, Mr. Kincade, did not communicate the two plea offers made by the prosecution prior to trial, but instead, ruled that the evidence showed that he did not prove he would have accepted a plea. Accordingly, this Court may consider new evidence and render a decision on the merits. *Banks v. Vannoy*, 708 F. App'x 795, 800 (5th Cir. 2017) (citing *Rapelje v. McClellan*, 134 S. Ct. 399, 400, 187 L. Ed.2d 442 (2013)).

There is no question that the Sixth Amendment's right to effective assistance of counsel applies to the negotiation of a plea deal. *United States v. Scribner*, 832 F.3d 252, 257–58 (5th

11

Cir. 2016). "To prevail on an ineffective assistance claim under *Strickland*, a petitioner (1) 'must show that counsel's performance was deficient,' and (2) 'that the deficient performance prejudiced [him].' A failure to establish either prong is fatal to the claim." *Banks*, 708 F. App'x at 798 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

An attorney's failure to communicate plea offers to a criminal defendant client would be adequate to establish deficient performance. *Banks*, 708 F. App'x at 799 (citing *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995). Here, the evidence before the Court established that Mr. Kincade communicated the prosecution's plea offers to Petitioner. Accordingly, Petitioner failed to establish that Mr. Kincade's performance was deficient.

Further, assuming *arguendo* that Petitioner had established Mr. Kincade failed to communicate the plea offers, Petitioner would then have to demonstrate prejudice. To find prejudice, the Court would have to conclude that there was "a reasonable probability that, [1.] but for counsel's ineffective advice, a plea would actually have been presented to the court; [2.] the court would have accepted the terms of the plea; and [3.] 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Banks*, 708 F. App'x at 799 *(quoting Lafler v. Cooper*, 566 U.S. 156, 164 (2012)). A reasonable probability is "a probability sufficient to undermine confidence in the outcome," and "is less than a preponderance of the evidence." *Arnold v. Thaler*, 484 F. App'x 978, 982 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694 and *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir.2008)).

Here, both the fifteen year and ten year capped plea offers are less severe than the sentence Petitioner received following trial. However, the evidence before the Court strongly

suggests that Petitioner had no interest in striking a plea deal and that the trial court judge was unlikely to accept either plea.  Petitioner submitted no evidence relevant to whether either plea agreement would have been accepted by Judge Manning.  The only evidence before the Court on that issue was Mr. Johnson and Mr. Brown's testimony that Judge Manning took an active role in evaluating plea deals, and would readily deny approval of any agreement he believed was too lenient.  Further, the only evidence Petitioner submitted on whether he would have accepted a plea deal was his own self-serving testimony, which was contradicted by his claim that he never even asked his attorney about the possibility of a plea.  Petitioner's failure to ask his lawyer about a possible plea strongly suggests that Petitioner, who admitted that he had extensive experience entering plea deals, had no intention of doing so here.  Accordingly, even if Petitioner could have established deficient performance by Mr. Kincade, he failed to prove prejudice resulting therefrom.

## CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for *habeas corpus* filed by Petitioner Matt Banks, [doc. #1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.

Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 29th day of March, 2018.

*/s/ Karen L. Hayes*
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE